*Guthrie & Tyler* for appellants; *Pirtle & Speed* for appellees.

---

## Page *vs* Hughes' Heirs.

APPEAL FROM THE LOUISVILLE CHANCERY COURT.

*Chancery practice.   Rule upon purchasers.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

UNDER a decree of the Louisville Chancery Court, a lot in Louisville was sold for payment of the purchase money, with a reservation of a lien, and J. D. Southard, the reported purchaser, with D. R. Southard and C. A. Page as his sureties, executed their bonds for the purchase money, according to the instalments directed by the decree. In January, 1847, the bond for the first instalment being due and unpaid, a rule was made and served upon the obligors to show cause why they should not pay it, and on their failure to appear, an attachment was awarded against them. The attachment was respited from time to time; and as the two other bonds became due, similar rules for payment followed by attachments and respitals, were made, until the 2d of June, 1848, when the recognizance entered into under one of the attachments was declared to be forfeited. And a rule was made on the purchaser and his sureties, to appear on the 9th of the same month, and pay the said bond or notes with interest and costs, or to show cause why the said lot should not be sold for cash in hand to pay the same. This rule was served on the two Southards, and as to Page, was returned not found, he having left the State, as his father informed the Marshal. But on the 7th day of June, he appears to have filed in the office of the Clerk of the Court, an instrument of writing executed by J. D. Southard, of even

PAGE
*vs*
HUGHES' HEIRS.

CHANCERY.

*Case 37.*

*January 9.*
Case stated.

date with the sale bonds, showing that upon his paying the bonds, he was entitled to the benefit of the purchase. At a previous stage of the proceedings, J. D. Southard, as purchaser, had filed in Court two receipts appearing to be for sums due on one of the bonds; and at another time an order had been made recognizing two other payments. On the 9th day of June, 1848, the return day of the last mentioned rule, an order was made, which after reciting the service of the rule on the two Southards, and their failure to appear, decreed an immediate sale, for cash in hand, of the lot, or so much as might be necessary for payment of the amount due upon the sale bonds with costs, &c., advertisement being first made for ten days, as directed in the order. On the 23d of June, C. A. Page appeared in Court, and filing his title bond from J. D. Southard, which had been lodged in the office, obtained time until the 30th to respond to the rule for a sale, and the sale was suspended until then. On the 30th, he filed his response, in which, claiming to be entitled to the benefit of J. D. Southard's purchase, and to have paid all that had been paid upon it, he states the true date of the two payments which had been recognized by the order above referred to, as of a later date, and prays that upon the proper adjustment of these credits, he be allowed a reasonable time to pay the balance of the purchase money, and thereby save his property from sacrifice, and he protests against a sale for cash, as irregular, and not within the power of the Court. Upon hearing this response, the credits referred to were corrected, the residue of the response overruled, and a sale directed to be made for the balance of the purchase money, and costs, &c., before the third Monday in July following, in the manner directed in the original order.

From this decree Page appeals, and assigns for error, in substance: 1st, That the rule for payment or a re-sale, should have been served on him. 2d, That day in Court should have been given for making payment before a sale was ordered. 3d, That a sale for cash in hand was improper. And 4th, That the order of sale

does not show with sufficient certainty the sum to be raised by the sale.

1. All ground for the first assignment of error, if it were otherwise available, is removed by the fact, that Page appeared, obtained a suspension of the sale, and responded to the rule. 2d and 3d, And as day after day had been given upon the rules to show cause why the money should not be paid; and as the whole proceeding, the general facts of which have alone been stated, evinces a disposition on the part of the purchaser and his sureties, and especially of Page, not only to delay payment, but to evade and contemn the process and orders of the Court, and to trifle with the obligation imposed by the purchase under its decree, we are of opinion, not only that there was no necessity for giving further day of payment, and would have been no propriety in so doing, but that it was due to the parties entitled to the proceeds, that the Court should at least exert its powers with promptness and vigor. The power of the Court to order a re-sale of the property sold under its own decree, upon the obstinate and protracted failure of the purchaser, after repeated warnings to pay the bonds or notes executed on the first sale, cannot, as we think, be seriously questioned. It has even been held, that on a common sale at auction, a power of re-sale, at the risk of the purchaser, is implied if he fail to comply with the terms, and the subject still remains within the control of the auctioneer or owner; and much more must it exist in case of a sale under a decree, in which a lien is expressly reserved, and where the subject and the parties remain under the control of the Chancellor until the object of his decree is obtained. Nor do we doubt his power, in case of palpable default in making payment according to the terms of the first sale, to direct a re-sale for cash in hand, the propriety of doing so in the particular instance being matter of sound equitable discretion. Such is the course of proceeding upon a sale bond taken under an execution sale at law. And so far from the Chancellor exercising extraordinary power in directing a re-sale for the satisfaction of bonds given on a former decretal sale, to be

PAGE
*vs*
HUGHES' HEIRS.

The Chancellor has the power, after a failure of a purchaser of property, sold by his order, to pay for it to order its re-sale—which may be for cash, or on a credit, as the Chancellor may deem most proper.

PAGE
*vs*
HUGHES' HEIRS.

made for cash in hand, such a course is in conformity with the analogous proceeding at law, and it would seem rather to be an exertion of extraordinary power, to vary the proceeding as he may do, by directing a re-sale on credit. The second and third errors assigned, are therefore deemed untenable.

4. But we think there is substantial ground for the remaining objection taken by the assignment of errors, that the order of sale is for the balance remaining unpaid upon the sale notes, without either specifying that balance, or the credits to be given on the original sum. The last order made upon the response of Page, mentions two credits to be allowed, and if it should be understood as directing a sale for the balance appearing after deducting these two credits alone, such construction, although it might avoid the objection of uncertainty, would leave the decree open to the objection perhaps more important that it had rejected the two receipts filed by the purchaser in open Court, and to which no objection had been made. We are of opinion, however, upon considering both orders of sale, and the response to which the last one refers, that it was not intended to exclude any credits to which the purchaser might appear to be entitled, but that it left to the commissioner the ascertainment of them. If the Chancellor had passed upon all the credits claimed, so that the commissioner, upon looking through the record, might have ascertained them, we should still have thought it more correct that they should have been brought together in the final order or decree of sale, leaving nothing for the commissioner but a mere calculation or comparison of sums. As the record stands, the commissioner must have determined whether the two receipts above referred to had been rejected or sanctioned by the Court, or whether they had been left for his judgment, in which last case he must have determined whether they should be allowed or disallowed. And as he would have sold for the balance appearing to be due according to this determination, the whole proceeding might have been frustrated by his error of judgment; and the Chancellor might have been called on

A Chancellor ordering a re-sale of property sold by him under his decree, where the purchaser had paid part of the purchase money, should specifically state in his order the sum to be raised by the sale.

after an attempted sale, and with the effect of defeating it, to make an adjustment of the credits which should have been made by him in the first instance, as being necessary to make the sale certainly effectual. It is easy to imagine cases of ordinary occurrence in which a mistake in judgment by the commissioner in allowing credits not fixed by the Court, and in selling for a balance thus found, might produce great embarrassment and confusion, by the discovery of the error at a period more or less remote. And we think the only safe and correct rule in such cases, is to leave nothing to the commissioner but the calculation and application of credits previously ascertained by the Court.

Wherefore, the order or decree of sale in this case is reversed, and the cause is remanded, with directions to ascertain the credits properly applicable to the notes or bonds now in question, and to direct a sale, either for an ascertained balance to be named in the decree, or for the balance to be ascertained by applying to the sums originally payable, the credits named in the decree, together, in either case, with the proper costs, &c.

*Guthrie* for appellant; *Thruston & Pope and Pirtle & Speed* for appellees.